IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ADVANCE CORPORATION,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-21-2926 |
| **BALTIMORE COUNTY, MARYLAND,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Advance Corporation ("Advance Corp."), a storage warehouse business in Baltimore County, Maryland, filed suit against Baltimore County ("the County"), seeking a declaration that a prohibition of commercial vehicle parking in Advance Corp.'s zoning district does not apply to portions of public road in proximity to Advance Corp.'s leasehold. ECF 5. Alternatively, Advance Corp. claims the prohibition violates state law, the Fifth Amendment's takings and due process clauses, and the Fourteenth Amendment's equal protection clause. *Id.* The County, which removed the case to this Court from the Circuit Court for Baltimore County, has moved to dismiss the complaint. ECF 24. The motion is fully briefed. ECF 26 & 27. The Court heard argument on the motion on July 29, 2022. ECF 30. The motion is granted in part. The federal constitutional claims are dismissed. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the case is remanded to the Circuit Court for Baltimore County.

**I.    Background**

Advance Corp. is a family-owned Maryland corporation that has operated a storage warehouse business since 1939. ECF 19-1, ¶ 4. Its place of business has been Baltimore County since 1958. *Id.* It maintains a location at 11500 Crossroads Circle in Baltimore County and employs approximately 150 people. *Id.* ¶¶ 2, 4.

Advance Corp. entered a lease for general and warehouse use of 11500 Crossroads Circle on June 25, 2013. *Id.* ¶ 5. The lease began on January 1, 2014. *Id.* It provides for a 123-month term ending on March 30, 2024, and permits Advance Corp. to exercise two, five-year options to renew the lease thereafter. *Id.* Advance Corp. alleges that, "[w]hen it signed this lease, [it] intended to operate its business at 11500 Crossroads Circle for at least 20 years." *Id.* Advance Corp. selected 11500 Crossroads Circle "based on the existing manufacturing zoning and [believing] that the area was going to be developed in a manner that would be consistent and conducive to heavy use warehousing and trucking." *Id.* ¶ 6. It also "relied on being able to park and stand commercial trucks on Crossroads Circle, a public street, prior to being loaded, something that was then legal." *Id.* 11500 Crossroads Circle and the surrounding areas are zoned manufacturing, light ("ML") and are in the MD 43 Overlay and Industrial, Major ("IM") Districts. *Id.* ¶¶ 2, 7.

On November 2, 2020, the Baltimore County Council enacted Bill 99-20, which added the following provision to County Code § 18-2-206:

> Prohibition in the MD 43 Overlay District. A person may not park or stand a commercial vehicle on any public road, street, alley[,] or way north of Tangier Drive and west of Earls Road in the MD 43 Overlay District. This prohibition shall not apply to any private road within the MD 43 Overlay District.

Balt. Cnty. Code § 18-2-206(d); ECF 19-1, ¶ 3; *see also* ECF 26-2 (Bill 99-20). Subsection (a) of that same section provides: "This section applies to residential zones as provided in the county zoning regulations." Balt. Cnty. Code § 18-2-206(a); ECF 19-1, ¶ 3. Violation of the bill's parking prohibition is a misdemeanor, Balt. Cnty. Code. § 18-2-206(e), punishable by a fine not to exceed $1,000 or by 90-days' imprisonment, Balt. Cnty. Code § 1-2-217(a). On or around September 1, 2021, the County posted signs on Crossroads Circle that stated: "NOTICE NO COMMERCIAL

2

VEHICLE PARKING ON THIS ROAD. CB- 99- 20." *Id.* ¶ 8. "This was [Advance Corp.'s] first notice of the enactment of Bill 99-20 or even that it had been proposed." *Id.*

As background for the County's enactment of Bill 99-20, Advance Corp. alleges that a developer, St. Johns Properties, acquired and developed land in 2017 in the Crossroads Circle area for "residential and office uses." *Id.* ¶ 10. The development is known as the Arbors at Baltimore Crossroads. *Id.* St. John Properties acquired additional land in the area that it has developed or plans to develop for residential and office use. *Id.* "When St. John Properties started developing the Crossroads Circle area for office and residential use, it started pressing the County to prohibit the parking and standing of trucks on Crossroads Circle, ostensibly because it affected the marketability of the area to secure tenants." *Id.* "St. John Properties itself had posted 'no parking' signs on Crossroads Circle, a County roadway, which St. John Properties later removed at the direction of the County." *Id.* According to Advance Corp., Bill 99-20 was enacted "after St. John Properties secretly lobbied to enhance the value and attractiveness of its development of residential and office uses in Crossroads Circle by banning the street parking and standing of commercial vehicles." *Id.* ¶ 11.

Advance Corp. and its trucking vendors, "under threat of being charged with a misdemeanor as provided in Bill 99-20," stopped parking on Crossroads Circle. *Id.* ¶ 12. This caused "disruption and dislocation" of Advance Corp.'s business. *Id.* Standing and parking commercial vehicles near the leasehold is "necessary" for Advance Corp.'s business because it allows for the loading and unloading of trucks. *Id.* Since the County posted the "no parking" signs, Advance Corp. "has had to incur the expense of renting and using a parking area about nine miles away from its place of business, which has resulted in less efficient loading and delivery of goods stored." *Id.* ¶ 13. It pays $2,000 per month to rent the parking area and some of its vendors

"are deterred" from serving it due to the nine-mile relocation. *Id.* "The distance of nine miles also translates into extra time and labor to move the trucks, extra fuel costs, and increased risk of being on the road." *Id.* Overall, Bill 99-20 "hinders and makes the operation of [Advance Corp.'s] business more costly, and substantially interferes with [its] ability to conduct its business as a storage warehouse business under its lease, so as to render [Advance Corp.'s] exercise of its option to renew its lease economically unfeasible." *Id.*

Advance Corp. filed suit against the County in Baltimore County Circuit Court. ECF 1-1, at 7–13. The County removed the complaint to this Court based on federal question jurisdiction. ECF 1. Advance Corp. alleges violations of unspecified state laws and various provisions of the United States Constitution and seeks, among other relief, a declaration that Bill 99-20 is unenforceable as to it. Regarding its state law claims, Advance Corp. alleges that Bill 99-20 does not apply to the stretch of Crossroads Circle adjacent to its warehouse because the County Code provision applies to residential zones and its warehouse is in a manufacturing zone. ECF 19-1, ¶ 9. Advance Corp. also alleges Bill 99-20 does not apply to its location because it is not north of Tangier Drive. *Id.* Alternatively, it alleges Bill 99-20 is an invalid exercise of the County's police power and that the County, in passing Bill 99-20, impermissibly spot-zoned and did not provide for a necessary amortization period. *Id.* ¶¶ 14–15. As to its federal constitutional claims, Advance Corp. claims it is denied equal protection under the Fourteenth Amendment. *Id.* ¶ 17. It alleges Bill 99-20's application to it "amounts to an invalid deprivation of property rights constituting a regulatory taking of [its] leasehold interest[.]" *Id.* ¶ 16. It also alleges Bill 99-20 constitutes "a substantial interference in the operation of [its] business without due process of law in violation of the Fifth and Fourteenth Amendments[.]" *Id.* ¶¶ 16, 18. Finally, it alleges Bill 99-20 is "overly broad and vague" and "invalid as an arbitrary, capricious and unreasonable enactment." *Id.* ¶ 19.

After this case was removed to this Court, Advance Corp. moved for summary judgment on its claim that Bill 99-20 does not apply to the portions of Crossroads Circle in proximity to 11500 Crossroads Circle. ECF 14. That motion remains pending. Subsequently, the County moved to dismiss the federal claims. ECF 24. At a hearing on the motion to dismiss, the Court dismissed the equal protection and regulatory takings claims for failure to state a claim and because Advance Corp. abandoned them. Accordingly, the only remaining federal questions are the substantive due process and void for vagueness claims.

**II.     Standard of Review**

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th ----, 2022 WL 3364824, at *3, *13 (4th Cir. Aug. 16, 2022). But the Court does not accept "legal

conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)).

On a Rule 12(b)(6) motion, the Court does not "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

### III. Discussion

#### A. Substantive Due Process

Advance Corp. alleges Bill 99-20 violated its substantive due process rights by substantially interfering with the operation of its business. The Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "Due process contains both substantive and procedural components." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014). Substantive due process "is an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them.'" *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To establish a substantive due process violation based on interference with an asserted property interest, a plaintiff must demonstrate: "(1) that [he] had property or a property interest; (2) that the state deprived [him] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Clayland Farm Enters., LLC v.*

*Talbot Cnty.*, 987 F.3d 346, 356–57 (4th Cir. 2021) (quoting *Quinn v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty.*, 862 F.3d 433, 443 (4th Cir. 2017)); *see also Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 691–92 (4th Cir. 2018) ("To succeed on a [substantive] due process claim, . . . a landowner must first show that it had a constitutional property interest and that the state deprived it of that interest.").

The County argues Advance Corp. does not allege the deprivation of any property interest. "A cognizable property interest," that is, one that is constitutionally protected, "requires 'a legitimate claim of entitlement' that 'stem[s] from an independent source such as state law.'" *Friends of Lubavitch v. Baltimore Cnty.*, 421 F. Supp. 3d 146, 169 (D. Md. 2019) (quoting *Siena Corp. v. Mayor of Rockville*, 873 F.3d 456, 461 (4th Cir. 2017)). It requires more "than a mere 'abstract need or desire' or 'unilateral expectation.'" *Pulte Home Corp.*, 909 F.3d at 692 (quoting *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005)).

Advance Corp. does not make this necessary allegation. Advance Corp. alleges that its property interest is its business operations and that Bill 99-20 "substantially interfered" with those operations because of the disruption caused by the commercial vehicle parking prohibition. ECF 19-1, ¶¶ 16, 21. But Advance Corp. cites no authority that its business operations constitute a cognizable property interest, and the Court is aware of none. Advance Corp. does not, for example, point to any Maryland law creating a legitimate claim of entitlement to the operation of its business. The only substantive due process case that Advance Corp. does cite, *Front Royal & Warren County Industrial Park Corp. v. Town of Front Royal*, 135 F.3d 275, 287–88 (4th Cir. 1998), involved municipal land-use and does not support its position. In that case, a plaintiff property owner brought a substantive due process claim based on the defendant Town's failure to provide sewer service to the plaintiff's lot. *Id.* at 277–78. The Fourth Circuit rejected the claim

because "the state courts were capable of rectifying, and did rectify, the Town's dereliction." *Id.* at 288. The Court noted, with limited discussion, the district court's holding that the plaintiff property owner "possessed a property interest because it fairly had a claim of entitlement to the sewer lines since the Town lacked all discretion to totally deny them." *Id.* That holding was based on the Fourth Circuit's reasoning in *Gardner v. City of Baltimore*, 969 F.2d 63 (4th Cir. 1992), which applied the "claim of entitlement" standard set forth in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). This standard, which is applied in municipal land-use cases, states that "whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval." *Gardner*, 969 F.2d at 68. This is not a municipal land-use case. Advance Corp. does not explain how this rule applies here, nor how the reasoning might create a cognizable property interest in the operation of its business. Additionally, even assuming there is a protected property interest in the operation of a business, Advance Corp alleges it continues to operate its business, albeit with some inconvenience and extra cost. So, Advance Corp.'s substantive due process claim must be dismissed for failure to allege the deprivation of a constitutionally protected property interest. *Id.* (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)); *see also Clayland Farm Enters.*, 987 F.3d at 357 (rejecting substantive due process claim based on government decision to not extend sewer service to the plaintiff's property because "there is no constitutional right to sewer service").[1]

---

[1] Advance Corp. appears alternatively to allege it has a constitutionally protected interest in its leasehold, and for purposes of this analysis, the Court will assume it does. It does not, however, allege the ordinance has deprived it of that interest. Indeed, it alleges it continues to lease the property. So, the purported property interest Advance Corp. alleges is impacted by Bill 99-20— its business operation—is not constitutionally protected. And the only constitutionally protected property interest Advance Corp. may have alleged—its leasehold—is not impacted by the Bill.

Even if Advance Corp. had alleged Bill 99-20 deprived it of a constitutionally protected property interest, its substantive due process claim still would have to be dismissed because it does not allege Bill 99-20 was arbitrary or irrational. "State deprivation of a protected property interest violates substantive due process only if it is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidable by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Siena Corp.*, 873 F.3d at 463–64 (quoting *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)). The Court has not uncovered, and the parties have not cited, any Fourth Circuit cases involving a substantive due process challenge to a parking ordinance. In the zoning context, however, courts applying this standard have considered, "among other factors, whether: (1) the zoning decision is tainted with fundamental procedural irregularity; (2) the action is targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice." *MLC Auto., LLC v. Town of Southern Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (citing *A Helping Hand, L.L.C. v. Baltimore Cnty.*, 515 F.3d 356, 373 n.10 (4th Cir. 2008)).[2]

The Fourth Circuit recently rejected a substantive due process claim in a zoning case where the challenged bills were "reasonable and substantially related to public health and safety." *Clayland Farms Enters.*, 987 F.3d at 357. The bills limited residential development and created different tiers of property based on expected public sewer needs. *Id.* at 351–52. The plaintiff property owner argued the bills deprived it of the ability to develop its property and its right to sewer service. *Id.* at 357. After rejecting the plaintiff's asserted property interests, the Fourth Circuit held the bills were not arbitrary and irrational. *Id.* The bills limiting development were

---

[2] This is not a zoning case, but the Court finds the principles are analogous because Advance Corp. challenges a local government decision that favors residential over commercial development.

"reasonable and substantially related to public health and safety" because they were attempts to "maintain the status quo" leading up to a new comprehensive development plan that was itself justified by "the existing sewer problems and the need to protect the ecological area." *Id.* And while the plaintiff argued the bill designating its property into a development tier made an incorrect designation—the property had limited existing sewer service but was designated as part water quality storage area and part area not planned for public sewerage systems, *id.* at 351–52—the inconsistency was reasonably explained by the fact that the property did not fit neatly into any designation and the ones selected were the best fit, *id.* at 357. "Other parcels were similarly impacted." *Id.*

Likewise, in *Siena Corp.*, the Fourth Circuit considered and rejected a substantive due process challenge to a zoning text amendment that effectively prohibited self-storage facilities from being built within 250 feet of lots with public schools. 873 F.3d at 460. The Court reasoned the amendment was not an arbitrary action targeted at the plaintiff, but rather "a general legislative enactment that applied equally to all property . . . ." *Id.* The Court explained:

> A single facility may provide the impetus for a general zoning enactment, but that does not mean the enactment is aimed solely at that facility. Nor does every loser in a zoning dispute have by virtue of the unfavorable outcome a so-called 'targeting' claim. . . . [The plaintiff] makes hay of the fact that no other developer was currently planning to build a self-storage facility near a public school, but that is hardly dispositive. What matters is that the zoning text amendment applied to all developers—both present and future—who might entertain plans similar to [the plaintiff's].

*Id.* The plaintiff's claim boiled down to selfish disagreement with the amendment, a far cry from the requisite showing of arbitrariness. *Id.* The Court concluded "[a]ll legislation benefits some parties while adversely affecting others[,]" and the plaintiff's proper recourse was the legislative process. *Id.*

This Court, too, has taken a critical eye to substantive due process claims. In *Wheelabrator Baltimore, L.P. v. Mayor of Baltimore*, 449 F. Supp. 3d 549 (D. Md. 2020), this Court dismissed a substantive due process challenge to provisions in the Baltimore Clean Air Act applicable to commercial solid waste incinerators. *Id.* at 557, 565–66. The plaintiffs operated incinerator facilities and claimed emission limitations and a requirement to implement "Continuous Emissions Monitoring Systems" were arbitrary and unreasonable because the City allegedly failed to exercise "reasoned judgment on proper air pollution control[,] guided by legal standards and scientific facts." *Id.* at 566. Judge Russell highlighted allegations that the law regulated pollutants in a manner consistent with the Environmental Protection Agency's guidance and reasoned that, as a result, the plaintiffs could not show the law was arbitrary, irrational, or unjustified by any circumstance or governmental interest. *Id.* (citing *Rucker*, 946 F.2d at 281). And in *Willowbrook Apartment Associates, LLC v. Mayor of Baltimore*, 563 F. Supp. 3d 428 (D. Md. 2021), this Court rejected a substantive due process claim brought by landlords challenging temporary legislation restricting their ability to increase rent and assess late fees to tenants. *Id.* at 437. While the laws were "overbroad, burdensome, and poorly tailored to the goals they are meant to achieve[,]" that did not "outweigh the unquestionably legitimate goals the Acts are meant to advance (protecting Marylanders from COVID-19's economic and public health consequences), and the logical relationship between the Act's prohibitions and those goals." *Id.* at 448–49. Judge Gallagher noted that, "on rational basis review, 'the Constitution does not require the City to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line.'" *Id.* at 449 (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012)).

11

Advance Corp. alleges the County passed the ordinance "ostensibly because it affected the marketability of the area" to residential tenants. ECF 19-1, ¶ 10. This allegation identifies at least one rational purpose of the bill: The County recognized the shift in the area towards residential and office development and decided to ban the parking of commercial vehicles on public streets to make the area more desirable to those tenants.³ Advance Corp. does not allege the County passed the ordinance inconsistent with regular practice or through some procedural irregularity. Nor does it allege the ordinance was "an arbitrary action targeted at [Advance Corp.] alone." *See Siena Corp.*, 873 F.3d at 464; *see also MLC Auto.*, 532 F.3d at 282 (denying defendant's motion for summary judgment on substantive due process claim where the evidence showed "the zoning decision was procedurally irregular in that it occurred without any reference to the comprehensive plan; [the plaintiff] was singled out for treatment; and the zoning was made without any studies and at the behest of a citizen petition, the first such petition in the Town since at least 1989"). Rather, the ordinance, as alleged, is "a general legislative enactment that applied equally to all property" in the covered area. *See Siena Corp.*, 873 F.3d at 464. Although Advance Corp. alleges St. John Properties engaged in secret lobbying of the County and benefitted from the commercial vehicle parking ban, it does not allege such lobbying was unusual, that the County skipped any step of its legislative process, or that Advance Corp. was somehow prevented from making its own voice heard. The Fourth Circuit has counseled that "[a]ll legislation benefits some parties while adversely affecting others[,]" and substantive due process is not a substitute for "the legislative process and the elected representative who facilitate that process . . . ." *Id.*

---

³ Advance Corp. alleges the ordinance's legislative history does not express a particular purpose, *id.* ¶ 11, but the government is not required "to articulate its reasons for enacting a [law]," and "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged [law] actually motivated the legislature." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citing *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).

Advance Corp. does not plausibly allege it was deprived of a constitutionally protected property interest or that Bill 99-20 is arbitrary, irrational, or unjustified by any government interest. Accordingly, its substantive due process claim is dismissed.

### B. Void for Vagueness

Advance Corp. claims that Bill 99-20 is so vague that it violates due process and should be declared void for its vagueness. "The void for vagueness doctrine is rooted in the Due Process Clause[s] of the Fifth and Fourteenth Amendments." *United States v. Comer*, 5 F.4th 535, 541 (4th Cir. 2021) (quoting *Manning v. Caldwell*, 930 F.3d 264, 272 (4th Cir. 2019)). "It is principally concerned with providing individuals with adequate notice of what conduct they cannot engage in and with delineating clear limits on the enforcement power of the state." *Id.* (citing *United States v. Van Donk*, 961 F.3d 314, 324 (4th Cir. 2020)). The doctrine applies to both criminal and civil enactments, and the "degree of vagueness that the Constitution [allows] depends in part on the nature of the enactment." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212–13 (2018) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982)). Where, as here, the challenge is to the definition of the criminal offense, the "doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Moriello*, 980 F.3d 924, 931 (4th Cir. 2020) (quoting *Doe v. Cooper*, 842 F.3d 833, 843 (4th Cir. 2016) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983))); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (stating a statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement").

Advance Corp. raises an as-applied vagueness challenge, so the Court must "consider whether [the law] is vague as applied to the particular facts at issue" and not speculate whether the law could be vague "as applied to the conduct of others." *United States v. Hasson*, 26 F.4th 610, 616 (4th Cir. 2022) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010)) (internal quotation marks omitted).  If the parking prohibition unambiguously extends the length of Crossroads Circle proximate to Advance Corp.'s leasehold, the vagueness challenge must fail because "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)).

The first concern in a void-for-vagueness challenge is whether the plaintiff had notice of the proscribed conduct.  "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).  Rather, "a court considering a vagueness challenge must determine if the statutory prohibitions 'are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with.'" *United States v. Whorley*, 550 F.3d 326, 333 (4th Cir. 2008) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (striking law so vague that "'men of common intelligence must necessarily guess at its meaning'") (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

Advance Corp. raises two arguments as to why Bill 99-20 does not provide fair notice of what it proscribes.  First, it argues Bill 99-20 does not adequately describe the geographic boundaries of the area subject to the commercial parking prohibition.  By its terms, the bill applies to areas "north of Tangier Drive" and "west of Earls Road."  Advance Corp. argues the boundaries of the area are thus "vaguely two-sided, and the contours are not otherwise delineated . . . ." ECF 26-1, at 20.  Adding to the purported confusion is that Tangier Drive ends before passing either

14

directly north or south of Crossroads Circle, so the leasehold is arguably "not located north of Tangier Drive." ECF 19-1, ¶ 9. Second, Advance Corp. argues the amended ordinance explicitly states it applies to residential zones, and "a person of ordinary intelligence [cannot] delineate between a residential zone or use[.]" ECF 26-1, at 20. Additionally, the portion of Crossroads Circle where the prohibition is being enforced is not located in a residential zone. ECF 19-1, ¶ 9. Advance Corp.'s notice arguments fail.

Just as a plaintiff whose conduct is clearly proscribed by law cannot challenge the law as vague, a plaintiff who receives actual notice that her conduct is proscribed cannot argue the law fails to provide fair notice. *United States v. Vasarajs*, 908 F.2d 443, 449 (9th Cir. 1990); *see also United States v. Carlson*, 87 F.3d 440, 444 (11th Cir. 1996) (holding prohibition on the manufacturing of substances "substantially similar" to controlled substances was not vague as applied to drug manufacturers who "obviously had actual notice" because they moved their laboratory to avoid prosecution under the law). For example, in *Vasarajs*, the Ninth Circuit rejected a vagueness challenge brought by a plaintiff who was convicted of violating an order barring her from returning to a military fort. The plaintiff argued the bar order did not adequately identify the geographic boundaries of the fort. 908 F.2d at 449. The Ninth Circuit held that was irrelevant because, when the plaintiff drove to the fort, she passed signs that said, "Welcome to Fort Richardson" and "You are now entering a military reservation[.]" *Id.* "These signs provided reasonable notice that [the plaintiff] had left behind civilian territory prior to reaching the guard shack." *Id.* These signs notified the plaintiff that she was on a military fort, even if the bar order itself did not clearly describe boundaries of the fort.

Advance Corp. alleges "Baltimore County posted signs on Crossroads Circle . . . stating: 'NOTICE NO COMMERCIAL VEHICLE PARKING ON THE ROAD.'" ECF 19-1, ¶ 8. Upon

seeing these signs, a person exercising ordinary common sense would understand she cannot park her commercial vehicle on the road where the sign was posted. Indeed, when Advance Corp. saw the "no parking" signs posted on Crossroads Circle near where its business is located, it clearly understood that Bill 99-20 prohibited the parking and standing of commercial vehicles on that road because it did not park its commercial vehicles out of fear of being charged with a misdemeanor. *Id.* ¶¶ 12–13. Where, as here, a party has pled actual notice of the proscribed conduct—even if the law is confusing or poorly drafted, as Advance Corp. claims—a void for vagueness challenge fails. *See Moriello*, 980 F.3d at 931 (noting the court's review of a vagueness challenge not based on the First Amendment was "limited to whether [the plaintiff] had fair notice that the [criminal] regulations proscribed her conduct"); *Vasarajs*, 908 F.2d at 449 (rejecting vagueness challenge where the defendant received actual notice by virtue of posted signs); *Carlson*, 87 F.3d at 444 (rejecting vagueness challenge because the defendants' conduct indicated they "had actual notice" of the prohibition); *United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012) (finding "no due process problem" where the defendant had actual notice of the proscribed conduct because "the Forest Service explicitly informed him that his residency was not authorized by the mining laws and regulations"); *Kolender*, 461 U.S. at 357–58 (noting that, with respect to the fair notice issue, "the doctrine focuses . . . on actual notice to citizens"). Advance Corp. clearly understood where it could not park commercial vehicles—in other words, it understood how Bill 99-20 applied to its conduct. *See Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 736 (D. Md. 2021) (dismissing vagueness challenge and noting "it seems clear that plaintiffs understand how the law applies to their conduct" based on their allegations).

At their core, Advance Corp.'s notice arguments are that the parking prohibition, as written, should not apply to Advance Corp. Indeed, Advance Corp. offers its void-for-vagueness claim in

16

the alternative to its state law arguments that Bill 99-20 does not apply to it. *See* ECF 26-1, at 20. Advance Corp. suggests the Court need not reach the void-for-vagueness claim if it determines the parking prohibition does not apply to Advance Corp, but if Bill 99-20 does apply to it, the law must be unconstitutionally vague. The Court declines to answer whether Bill 99-20 applies to Advance Corp.—a question better left to the state courts. Assuming Bill 99-20 applies where the alleged "no parking" signs are posted, as Advance Corp. alleges in the alternative for purposes of its vagueness claim, the Court concludes Advance Corp. received actual notice that it cannot park commercial vehicles along Crossroads Circle. As in *Vasarajs*, actual notice forecloses a notice-based vagueness challenge.

The second concern in a void-for-vagueness challenge is "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 455 U.S. 566, 574 (1974)). The concern primarily relates to whether a criminal statute leaves a determination of guilt "to the subjective view of judges and law enforcement officials." *Manning*, 930 F.3d at 276; *see also Grayned*, 408 U.S. at 108–09 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."). In *Manning*, the Fourth Circuit found an ordinance that permitted criminal punishment of "habitual drunkards" impermissibly required "[d]eterminations . . . [that] invite[d] arbitrary enforcement." 930 F.3d at 276. The Court reasoned "[p]olice officers, prosecutors, and even state circuit court judges likely have differing perceptions regarding what frequency of drunkenness exceeds the necessary threshold for a person to be considered an 'habitual drunkard.'" *Id.* Interpretation of the phrase "le[ft] open the widest conceivable inquiry about a person's behavior and depend[ed] 'entirely upon the prohibition philosophy of the particular' individual

17

enforcing the scheme at that moment." *Id.* (quoting *Booth v. Commonwealth*, 88 S.E.2d 916, 917 (Va. 1955)). The Court concluded the absence of any standards suggested "the law was designed to target persons, including the homeless, that state officials deem undesirable." *Id.* As a result, the law was held void for its vagueness. *Id.*; *see also Coates*, 402 U.S. at 614 (holding a law that prohibited groups from conduct "annoying to persons passing by" to be unconstitutionally vague because "[c]onduct that annoys some people does not annoy others").

Bill 99-20 does not authorize or encourage arbitrary and discriminatory enforcement. In objective terms, it specifically identifies the zoning district to which it applies, names specific streets in the district as the outer boundaries of the prohibition area, and uses cardinal directions to indicate the orientation of the area relative to those boundaries. This is not a case in which a law enforcement officer would have to make a subjective judgment about the character or nature of an individual violator. *Cf. Kolender*, 461 U.S. at 360–62 (finding a law encouraged arbitrary enforcement because it required law enforcement officers to decide whether identification produced by an individual was "credible and reliable"). To the extent Advance Corp. argues Bill 99-20 is vague because it is not enforced evenly throughout the prohibition area, *see* ECF 19-1, ¶ 11, the Court is not persuaded—prosecutorial discretion does not render a law unconstitutionally vague. *Spence v. Washington*, 418 U.S. 405, 414 n.9 (1974) (rejecting void-for-vagueness challenge where the "statute's application [was] quite mechanical" and stating "if selective enforcement has occurred, it has been a result of prosecutorial discretion, not the language of the statute"). And to the extent Advance Corp. argues the prohibition is vague because it is being erroneously enforced, the vagueness doctrine is not the appropriate vehicle to vindicate that claim. An officer's enforcement of a 10:00 p.m. curfew at 8:15 p.m., for example, does not render the

10:00 p.m. curfew vague. In such cases, the law cannot be said to "authorize[] or encourage[] seriously discriminatory enforcement." *See Fox Television Stations*, 567 U.S. at 253.

Advance Corp. has failed to plausibly plead Bill 99-20 is void for vagueness.[4]

### C. State Law Claims

A federal court's supplemental jurisdiction is not extinguished as a matter of course when all pending federal claims are dismissed. *See* 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). A court "may," however, "decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In those circumstances, whether to dismiss a claim—or, in a removed case, to remand it—is committed to the discretion of the trial court. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353–57 (1988). Courts consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims." *See, e.g., Tolliver v. Tandium Corp.*, No. ELH-21-1441, 2022 WL 80587, at *3–4 (D. Md. Jan. 7, 2022) (quoting *Carnegie-Mellon*, 484 U.S. at 350); *see also Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (noting courts should consider the factors set forth in *Carnegie-Mellon* although the case was decided prior to the implementation of 28 U.S.C. § 1367(c)).

---

[4] The Court also rejects two arguments first advanced at the motions hearing. First, Advance Corp. argued it lacks notice of Bill 99-20's prohibition because it is unaware if the County or some intervenor posted the signs on Crossroads Circle. The complaint forecloses this argument. The complaint states that "[o]n or about September 1, 2021, *Baltimore County posted signs* on Crossroads Circle . . . ." ECF 19-1, ¶ 8 (emphasis added). Second, Advance Corp. argued that Bill 99-20 was vague because its applications to areas other than Crossroads Circle is unclear. The Court cannot consider facts that do not apply to Advance Corp. in an as-applied challenge. *See Moriello*, 980 F.3d at 931 (rejecting the plaintiff's "attempts to take [a void-for-vagueness challenge] beyond the facts of her own case" because her challenge was not based on the First Amendment and a facial challenge was thus not appropriate).

This Court routinely declines to exercise jurisdiction over state law claims if all federal claims have been dismissed. *See, e.g.*, *Tolliver*, 2022 WL 80587, at *4; *Conkel v. Family & Children's Servs.*, No. JKB-13-331, 2013 WL 2105854, at *1 (D. Md. May 13, 2013); *NRT Mid-Atl., LLC v. D'Ambrosia*, No. DKC-08-166, 2008 WL 11367473, at *1 (D. Md. Dec. 22, 2008). The Court sees no reason to depart from that approach here. This case was originally filed in the Circuit Court for Baltimore County and was removed by the defendant based on federal question jurisdiction. ECF 1, ¶¶ 1, 8. The remaining claims raise only questions of state law, which turn on an interpretation of the Baltimore County Code. ECF 5. The state law claims, moreover, relate to the County's decisions about local land use. *Id.* "Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts." *Pulte Home Corp.*, 909 F.3d at 697 (quoting *Gardner*, 969 F.2d at 67). Principles of comity thus militate toward remand. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining claims.

## IV.   Conclusion

Advance Corp. has failed to state a federal claim, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the County's motion to dismiss, ECF 24, is granted as to Advance Corp.'s federal claims. The motion remains pending as to the state law claims. Advance Corp.'s motion for summary judgment, ECF 14, also remains pending. The case is remanded to the Circuit Court for Baltimore County.

DATED this 13th day of September, 2022.

Deborah L. Boardman
United States District Judge